IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | CIVIL ACTION NO.: |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| ALLSUP'S CONVENIENCE STORES, INC. | ) | JURY TRIAL DEMAND |
| | ) | |
| Defendant. | ) | |
| ————————————————————— | ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability, sex and/or pregnancy and to provide appropriate relief to Yolanda Chavez, Joy Martinez-Pointer, and similarly aggrieved pregnant women, employed by Allsup's in at least New Mexico and Texas who were discharged and/or otherwise discriminated against by Allsup's because of disabilities and/or because of sex or pregnancy. As alleged with greater particularity below, Joy Martinez-Pointer and other pregnant female employees of Allsup's with disabilities were also denied reasonable accommodations for their disabilities and were discharged from their employment by Allsup's in violation of the ADA. Further, as alleged with greater particularity below, Yolanda Chavez, Joy Martinez-Pointer, and similarly aggrieved pregnant women employed by Allsup's were discriminated against in violation of Title VII and the PDA on the basis of sex, pregnancy, childbirth, or related medical conditions when they were (1) discharged; (2) subjected to

-1-

discrimination in the terms and conditions of their employment; and/or (3) not treated the same as other persons not affected by pregnancy, childbirth, or related medical conditions but who were similar in their ability or inability to work.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3);  and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission ("Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of  Title VII and Title I of the ADA and  is expressly authorized to bring this action by Sections 706(f)(1) and (3) of  Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C.§§ 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Allsup's Convenience Stores, Inc., ("Defendant or "Allsup's") has been and is a New Mexico corporation.

5.      At all relevant times, Defendant has continuously been doing business in at least the State of New Mexico and the State of Texas, and has continuously had at least 15 employees.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h) and Section 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7), which incorporate by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

7.       At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

<u>**ADMINISTRATIVE PROCEDURES**</u>

8.      On July 19, 2012 and November 13, 2013, both more than thirty days prior to the institution of this lawsuit, Joy Martinez-Pointer and Yolanda Chavez each respectively filed a charge with the Commission alleging violations of Title VII and the ADA by Defendant.

9.      The EEOC provided Defendant with notice of the charges of discrimination.

10.      EEOC investigated the charges of discrimination.

11.      Based on evidence uncovered during the EEOC's investigation, EEOC issued letters of determination to Allsup's Convenience Stores, Inc., finding reasonable cause to believe that Defendant had engaged in unlawful employment practices prohibited by Title VII, as amended by the PDA and unlawful employment practices prohibited by the ADA.

12.      The Commission's determinations included invitations for Defendant to join the Commission in informal methods of conference, conciliation, and persuasion in an attempt to eliminate and remedy the alleged unlawful employment practices.

13.     Defendant participated with EEOC in conciliation, during which process Defendant and EEOC communicated regarding the alleged unlawful employment practices and how to eliminate and remedy them.

14.     The Commission and Defendant were unable to reach an agreement acceptable to the Commission through the conciliation process.

15.     The Commission sent notice to Defendant that conciliation had failed.

16.     All conditions precedent to the institution of this lawsuit has been fulfilled.

## GENERAL ALLEGATIONS

*Allsup's Medical Leave Policies*

17.     As required by the Family Medical Leave Act ("FMLA"), Allsup's allows up to 12 weeks of unpaid leave for employees with at least one year of employment.

18.     For employees with less than one year of employment, Allsup's allows up to 60 days of unpaid leave for illness – not covered by FMLA; work-related injury – not covered by Worker's Compensation; Funeral Attendance; Military Service; and Civic Duty.

### *Joy Martinez-Pointer*

19.     Ms. Martinez-Pointer was hired by Allsup's as a Store Clerk on about February 1, 2011.

20.     Beginning in March, 2011, Ms. Martinez-Pointer worked the swing shift, from 3:00 p.m. to 11:00 p.m. at Allsup's.

21.     In her position on the swing shift, Ms. Martinez-Pointer provided customer service to store customers and as time permitted, she stocked shelves and cleaned or dusted in the store.

22.     In her position on the swing shift, Ms. Martinez-Pointer rarely did any lifting, and had never had to lift anything more than 20 pounds.

23.     On or about October 4, 2011, Ms. Martinez-Pointer informed her supervisor of her pregnancy.

24.     Less than a week after informing her supervisor of her pregnancy, Ms. Martinez-Pointer was assigned a new supervisor at Allsup's.

25.     On about November 13, 20111, Ms. Martinez-Pointer's new supervisor reassigned Martinez-Pointer to the graveyard shift.

26.     On the graveyard shift, Store Clerks received product delivered to the store by trucks, stocked the delivered product on the shelves, provided customer service, and operated the cash register to assist customers making purchases.

27.     On the graveyard shift, two employees were on duty, so that one employee could handle receiving truck deliveries outside the store, and the other was in the store to serve customers and perform cashier duties.

28.     When Ms. Martinez-Pointer was assigned to the graveyard shift, her co-worker handled the truck deliveries, and brought the product inside the store, then both employees would stock the product onto the shelves as time permitted when customers were not requiring attention.

29.     While Ms. Martinez-Pointer was assigned to the graveyard shift, she was not required to lift anything that weighed more than 20 pounds.

30.     At all relevant times, Joy Martinez-Pointer had an impairment, complications of the cervix, that substantially limited major life activities, including lifting and reproductive

system functions and/or Martinez-Pointer had a record of such impairment to her cervix that substantially limited those major life activities.

31.     On about November 17, 2011, Ms. Martinez-Pointer provided her supervisor with a doctor's note, stating that due to her pregnancy complications, she should not lift more than 20 pounds.

32.     On about November 18, 2011, Ms. Martinez-Pointer was sent home, not allowed to work, and placed on unpaid medical leave.

33.     Ms. Martinez-Pointer was fully able to perform her job functions on the graveyard shift, with or without reasonable accommodation, and did not need or request medical leave.

34.     Ms. Martinez-Pointer was fully able to perform the job duties of the day and swing shifts with or without reasonable accommodation and did not need or request medical leave.

35.     After Ms. Martinez-Pointer had been on medical leave for 60 days, she was discharged by Allsup's.

***Other Pregnant Employees with Disabilities***

### *Heavenly Elliott*

36.     On or about August, 2012, Heavenly Elliott was hired by Allsup's as a Store Clerk in Texas.

37.     On or about mid January, 2013, Ms. Elliott notified her supervisor at Allsup's of her pregnancy.

38.     On or about January 31, 2013, Ms. Elliott had complications with her pregnancy and her healthcare provider placed on her on bed rest for 30 days.

39.     In late February, 2013, Ms. Elliott was released by her healthcare provider to return to work at Allsup's with a lifting restriction of 20-25 pounds, an instruction to avoid strenuous physical labor, and a request to limit her work hours to about 30 hours a week.

40.     At all relevant times, Heavenly Elliott, had impairments, complications of pregnancy and preterm labor that substantially limited major life activities, including lifting and reproductive system functions.

41.     After requesting a return to work and accommodation of her healthcare provider's restrictions on work, Ms. Elliott was told by her supervisor that Allsup's would probably not permit her return with restrictions. Ms. Elliott was then sent home, not allowed to work, and placed on unpaid medical leave

42.     In early March, 2013, Allsup's obtained a Medical Clearance form from Ms. Elliott's healthcare provider which described her condition as "complications of pregnancy & preterm labor precautions."

43.     Ms. Elliott was fully able to perform her job functions with reasonable accommodation and did not need or request medical leave.

44.     After Ms. Elliott had been on medical leave for 60 days, she was discharged on or about April 19, 2013.

*Shelby Whitfield*

45.     From at least January, 2009 through about July, 2012, Shelby Whitfield was an employee of Allsup's in Hobbs, New Mexico.

46.     At all relevant times, Shelby Whitfield, had an impairment, complications of pregnancy, including bleeding, that substantially limited major life activities, including lifting

and reproductive system functions and/or Whitfield had an impairment to her back, or record of impairment to her back, that substantially limited the major life activity of lifting.

47.     On or about July 2, 2012, Ms. Whitfield informed Allsup's of her pregnancy.

48.     On the same day, on or about July 2, 2012, Ms. Whitfield was transferred to a different Allsup's store in Hobbs, New Mexico.

49.     Upon reporting for duty to her new store assignment, Ms. Whitfield advised her new supervisor of her pregnancy and her request to maintain the same evening shift schedule she had at her prior store.

50.     About one week after notifying her new supervisor of her pregnancy and shift preference, Ms. Whitfield was requested to work irregular shifts other than her preferred evening shift, frequent double-shifts, and frequent overtime hours.

51.     After noticing that her requests were not being honored, Ms. Whitfield reminded her new supervisor of her pregnancy and her back impairment. And Ms. Whitfield requested a set schedule, preferably with evening shifts, and requested to refrain from working overtime hours, to accommodate Ms. Whitfield's limitations.

52.     Despite her requests for accommodation, Ms. Whitfield was continually scheduled on irregular shifts; her shift assignments changed almost daily; and she was frequently asked to work double-shifts or overtime hours.

53.     On or about July 26, 2012, Ms. Whitfield provided her supervisor with a doctor's note stating that Whitfield required bed rest

54.     Ms. Whitfield's supervisor responded that unless she returned within three months, she would be terminated and would have to re-apply.

55.     Prior to being placed on bed rest, Ms. Whitfield was fully able to perform her job functions with reasonable accommodations, but was denied her requests for accommodations.

### Amanda Vega

56.     At all relevant times, including in July, 2012,  Amanda Vega was an Assistant Manager for Allsup's in Texas.

57.     In about July, 2012, Ms. Vega advised Allsup's of her pregnancy.

58.     At all relevant times, Ms. Vega, had impairments, including impairments to her cervix that required surgery and caused her doctor to describe her condition as a "high-risk" pregnancy, which substantially limited major life activities, including lifting and reproductive system functions.

59.     In late September or early October, 2012, Ms. Vega provided her supervisor with a doctor's note stating that her pregnancy was "high risk" and due to recovery from surgery she was currently unable to work. The doctor's note also advised Allsup's that when Ms. Vega recovered from surgery she would need to return to work with restrictions on her duties.

60.     In approximately mid-October, 2012, about two weeks after her surgery, Ms. Vega provided Allsup's a medical release, authorizing her to return to work with restrictions that she not stand for too long and avoid heavy lifting.

61.     Ms. Vega was not allowed to return to work when she was able to do so in approximately mid-October, 2012.

62.     Ms. Vega was fully able to perform her job functions with reasonable accommodations of about two weeks leave to recover from surgery, and with reasonable accommodation of her post-recovery restrictions.

63.     After Ms. Vega had been on medical leave for 60 days, she was discharged.

64.     Other pregnant employees, as yet unidentified, with impairments that substantially limited major life activities, sought and were denied accommodations for their disabilities, not allowed to work, forced into unpaid leave status, and discharged when the allowed leave expired.

***Other Pregnant Employees Experienced Discrimination Because of Sex, Pregnancy, Childbirth, or Related Medical Conditions***

### *Yolanda Chavez*

65.     In August, 2013 Yolanda Chavez had worked for Allsup's for over two (2) years, and held the position of Assistant Store Manager.

66.     In her role as Assistant Store Manager, Ms. Chavez rarely had to do any lifting, and was not required to lift more than 20 pounds.

67.     On or about August 5, 2013, Ms. Chavez provided her supervisor with a doctor's note stating that Ms. Chavez was pregnant, that she was due to deliver on February 14, 2014 and that she was able to work part-time or full-time with the following limitations: (1) [d]uring an eight hour shift, she needs one 30 minute break after 4 hours (2) [a]fter 2-3 hours of standing, a 10 minute break in order to elevate her feet; (3) [s]he may not lift anything weighing more than 20 pounds; and (4) [s]he must be able to drink (beverages/water) during the shift.

68.     Upon providing the doctor's note, Ms. Chavez was told that Allsup's did not provide light-duty.

69.     Allsup's refused to discuss with Ms. Chavez whether the doctor's recommendations fit within her existing job.

70.     Allsup's sent Ms. Chavez home, would not allow her to work, and placed Ms.

Chavez on unpaid medical leave.

71.     Ms. Chavez was fully able to perform her job functions as Assistant Manager with accommodation for the limitations of her doctor, and did not need or request medical leave.

72.     After Ms. Chavez had been on unpaid medical leave for sixty (60) days, she was discharged.

### Courtney Bow

73.     Courtney Bow was hired by Allsup's in about March, 2011, as a Store Clerk at an Allsup's store in Texas.

74.     In October, 201l, Ms. Bow was about two (2) months pregnant.

75.     In October, 2011, Ms. Bow provided Allsup's a doctor's note requesting a thirty (30) pound lifting restriction for her job duties.

76.     In October, 2011, Allsup's advised Bow that it did not provide light-duty.

77.     Ms. Bow was fully able to perform her job functions as Store Clerk with accommodation of the limitations recommended by her doctor and did not need or request medical leave.

78.     After providing her doctor's note with a lifting restriction, Ms. Bow was sent home, not allowed to work, put on unpaid medical leave, and when medical leave expired, she was discharged in January, 2012.

### Candace Munns

79.     Candace Munns was hired by Allsup's in December, 2011 as a Store Clerk at an Allsup's store in Texas.

80.     In January, 2013, Munns was pregnant.

81.     In January, 2013, Munns provided Allsup's a doctor's note requesting a thirty (30) pound lifting restriction due to her pregnancy.

82.     After providing her doctor's note with a lifting restriction, Ms. Munns was sent home, not allowed to work, put on unpaid FMLA designated leave, and when FMLA designated leave expired, she was discharged in May, 2013.

***Shawnta Smith***

83.      In August, 2011, Shawnta Smith was hired by Allsup's as a Store Clerk at an Allsup's store in Texas.

84.     In December, 2011 Smith was pregnant.

85.     In December, 2011, Ms. Smith temporarily hurt her back while pregnant, and her doctor provided a medical release, allowing her to work without any restrictions.

86.     In spite of Ms. Smith's release to full-duty work, Defendant's manager would not allow her to work.

87.     Defendant's manager told Ms. Smith the company was "afraid she might hurt herself" due to her pregnancy, and sent her home.

88.     Other pregnant employees, as yet unidentified, were discriminated against in the terms, conditions, privileges of their employment, treated less favorably than non-pregnant employees similar in their ability or inability to work, not allowed to work, forced into unpaid leave status, and discharged when the allowed leave expired.

***Treatment of other non-pregnant employees***

89.     Pregnant women employed by Defendant were denied opportunities for modified tasks or alternative assignments that are or were provided to non-pregnant employees similar in

their ability or inability to work.

90.     A male employee identified a need for limitations on lifting and he was permitted to continue working with accommodation for his lifting limitations.

91.     Another male employee was permitted leave in excess of 60 days for a medical procedure and treatment and was not automatically discharged under Defendant's leave policies as were pregnant women.

92.     A non-pregnant female was permitted schedule modifications due to her medical condition/disability.

93.     Upon information and belief, other non-pregnant employees were provided accommodations which were denied to the pregnant employees.

## FIRST CLAIM FOR RELIEF

### [Disparate Treatment/ Termination Because of Disability – 42 U.S.C. § 12112(a)]

94.     The allegations contained in the foregoing paragraphs are hereby incorporated herein by reference.

95.     Since at least October, 2011, Defendant violated Section 102(a) of the ADA, 42 U.S.C. §§ 12112(a), by discriminating against qualified individuals with disabilities, including, Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified pregnant employees with disabilities by:

a)      Subjecting qualified individuals with disabilities to discrimination in their terms, conditions, and privileges of employment, including forcing qualified individuals with disabilities to take involuntary leave immediately upon notification of their disabilities or requesting accommodation; and

b)      Discharging qualified individuals with disabilities because of their disabilities.

96.     The effect of the practices complained of in the foregoing paragraphs has been to deprive Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega,  and other as yet unidentified aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as  employees because of their disabilities.

97.     The effect of the practices complained of in the foregoing paragraphs has been to deprive Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

98.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

99.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals.

100.    The effects of the practices complained of in the foregoing paragraphs  has been to inflict emotional pain, suffering, and inconvenience upon Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals.

101.    The effects of the practices complained of in the foregoing paragraphs has been to deprive Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals of the financial and other benefits of working for

Defendant.

## SECOND CLAIM FOR RELIEF

### [Failure to Make Reasonable Accommodation– 42 U.S.C. § 12112(b)(5)(A)) and 12112(b)(5)(B)]

101.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

102.    Since at least October, 2011 to present, Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals sought reasonable accommodation for their disabilities, including but not limited to modified job tasks, shift modifications, alternative assignments, temporary light duty, and/or reasonable periods of leave without automatic penalty of discharge.

103.    At all relevant times, Defendant was aware of the disabilities of Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals.

104.    At all relevant times, Defendant failed to provide Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals with the reasonable accommodation(s) requested or any other accommodation.

105.    As described in the foregoing paragraphs, Defendant engaged in unlawful employment practices, in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A) by not making reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability.

106.    In the alternative, Defendant's actions described in the foregoing paragraphs, violated Section 102(b)(5)(B) of the ADA, 42 U.S.C. § 12112(b)(5)(B), by denying employment

opportunities to Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals, who are otherwise qualified individuals with disabilities, because of their disabilities and/or the need to make reasonable accommodation to the physical impairments of the employees.

107.    The effect of the practices complained of  in the foregoing paragraphs  has been to deprive Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals of equal employment opportunities and otherwise adversely affect their  status as employees because of their disability(s).

108.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

109.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals.

110.    The effects of the practices complained of in the foregoing paragraphs  has been to inflict emotional pain, suffering, and inconvenience upon Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals.

111.    The effect of the practices complained of in the foregoing paragraphs  has been to deprive Joy Martinez-Pointer, Heavenly Elliott, Shelby Whitfield, Amanda Vega, and other as yet unidentified aggrieved individuals of the financial and other benefits of working for Defendant.

## THIRD CLAIM FOR RELIEF

**[Discrimination on the basis of sex, pregnancy, childbirth, or related medical condition– 42 U.S.C. § 2000e-(3) and 42 U.S.C. § 2000e(k)]**

112.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

113.     Since at least October, 2011 to present, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII and in violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. 2000(e)(3) and 2000e(k) by discriminating against Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals because of their sex and/or pregnancy, childbirth or related medical condition(s). Defendant's unlawful employment practices in violation of Title VII and the PDA include the following:

a) discharging Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals because of their sex and/or their pregnancy, childbirth,  or related medical conditions when they sought job-duty modifications, shift accommodations, leave, or other accommodations that would have permitted them to continue working during pregnancies;

b) subjecting Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals to discriminatory terms, conditions, or privileges of employment because of their sex and/or their pregnancy, childbirth or related medical conditions, including but  not limited to forcing these pregnant women on involuntary medical leave

-17-

and denying    their requests for modified tasks, modified shifts, alternative assignments,

light duty or leave;

      c) failing to treat Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield,

Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet

unidentified aggrieved individuals the same for all employment related purposes as other

persons not    affected by pregnancy, childbirth, or related medical conditions but similar

in their ability or inability to work, including but not limited to providing job

opportunities, opportunities for job-duty modifications or other accommodations for

temporary impairments or disabilities, and allowing more favorable leave that did not

result in discharge;

      d) discharging Shawnta Smith and compelling her to take leave rather than

allowing her to perform her job because Defendant's manager told Smith the company

was "afraid she might hurt herself due to her pregnancy"; and

      e) compelling Yolanda Chavez to take unpaid medical leave and discharging her

despite her ability to perform her Assistant Manager job and replacing her with a non-

pregnant individual.

114.    The effect of the practices complained of in the foregoing paragraphs has been to

deprive Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney

Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals of

equal employment opportunities and otherwise adversely affect their status as employees

because of their sex, and/or their pregnancies, childbirth, or related medical conditions.

115.    The unlawful employment practices complained of in the foregoing paragraphs

were intentional.

116.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals.

117.    The effects of the practices complained of in the foregoing paragraphs has been to inflict emotional pain, suffering, and inconvenience upon Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals.

118.    The effects of the practices complained of in the foregoing paragraphs has been to deprive Yolanda Chavez, Joy Martinez-Pointer, Shelby Whitfield, Amanda Vega, Courtney Bow, Shawnta Smith, Candace Munns, and other as yet unidentified aggrieved individuals  of the financial and other benefits of working for Defendant.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in disability discrimination, including denying reasonable accommodations; discriminating in terms, conditions or privileges of employment; or discharging employees because of disability(s).

B.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in

discrimination based on sex and/or pregnancy, childbirth, or related medical conditions. Defendant should be specifically enjoined from discharging employees because of sex and/or pregnancy, childbirth, or related medical conditions; discriminating against employees in terms, conditions, or privileges of employment because of sex and/or pregnancy, childbirth, or related medical conditions; and from failing to treat women affected by pregnancy, childbirth, or related medical conditions the same as other persons not so affected but similar in their ability or inability to work.

      C.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and pregnant women, and which eradicate the effects of its past and present unlawful employment practices.

      D.     Order Defendant to make whole Yolanda Chavez, Joy Martinez-Pointer, other identified aggrieved individuals, and as yet unidentified aggrieved individuals by providing appropriate back pay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement, and/or front pay.

      E.     Order Defendant to make whole Yolanda Chavez, Joy Martinez-Pointer, other identified aggrieved individuals, and as yet unidentified aggrieved individuals  by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses in amounts to be determined at trial.

      F.     Order Defendant to make whole Yolanda Chavez, Joy Martinez-Pointer, other identified aggrieved individuals, and as yet unidentified aggrieved individuals  by providing

compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain, suffering, anxiety, stress, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      G.     Order Defendant to pay Yolanda Chavez, Joy Martinez-Pointer, other identified aggrieved individuals, and as yet unidentified aggrieved individuals punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

      H.     Grant such further relief as the Court deems necessary and proper.

      I.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. David Lopez
General Counsel

Gwendolyn Young Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012

Rita Byrnes Kittle
Supervisory Trial Attorney
303 East 17th Avenue, Suite 410
Denver, CO 80203

_/s/ Loretta Medina_
Loretta Medina
Senior Trial Attorney
505 Marquette Avenue NW, Suite 900
Albuquerque, NM 87102
 (505) 248-5230
loretta.medina@eeoc.gov